UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SONIA BRAUN-SALINAS and GUILLERMO SALINAS, husband and wife, and ESTER MACEDO, individually, | Case No.: 3:13-CV-00264-AC |
| | OPINION AND ORDER |
| Plaintiff, | |
| v. | |
| AMERICAN FAMILY INSURANCE GROUP d/b/a AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a foreign business corporation, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiffs Sonia Braun-Salinas ("Braun-Salinas"), Guillermo Salinas ("Salinas"), and Ester

Macedo ("Macedo")(collectively "Plaintiffs"), seek payment of $1,000,000 under the personal

umbrella policy, identified as Policy No. 36-U02919-01 (the "Umbrella Policy"), issued to Salinas

and Braun-Salinas by defendant American Family Insurance Group ("American") for injuries sustained by Braun-Salinas and Macedo in a motor vehicle accident, and payment of $100,000 under the Family Car Policy, identified as Policy No. 1171-2136-02-46-FPPA-OR (the "Car Policy"), also issued to Salinas and Braun-Salinas by American, for loss of consortium suffered by Salinas as a result of the physical injuries to his wife, Braun-Salinas. Additionally, Plaintiffs seek $1,500,000 in emotional distress damages. American moves for summary judgment on Plaintiffs' tort-based claims, including claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence *per se*, as well Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and for emotional distress damages based on a breach of contract, and Salinas's claim for loss of consortium.

The court finds that Plaintiffs have failed to establish that American breached its implied duty of good faith and fair dealing, that OR. REV. STAT. 746.230 imposes duties on insurers separate from those found in the policies, or that Salinas's loss of consortium claim is considered a "bodily injury" under the terms of the Car Policy. The court also finds that Plaintiffs have conceded their claims for intentional and negligent infliction of emotional distress and emotional distress damages based on breach of contract. Accordingly, American's motion for partial summary judgment is granted in its entirety.[1]

*Background*

On January 14, 2011, Braun-Salinas and Macedo were seriously injured in a motor vehicle accident caused by the negligence of Huy Tang Hoang. (First Am. Compl. ("Compl.") ¶¶ 4-5.) On

---

[1]The parties have consented to jurisdiction by magistrate in accordance with 28 U.S.C. § 636(c)(1).

April 12, 2011, Hoang's insurer, Geico Insurance Company, tendered its policy limits of $25,000 per person, $50,000 per occurrence, to Braun-Salinas and Macedo. (Nichols Decl. Ex. 2; Compl. ¶ 20.) On October 14, 2011, Braun-Salinas and Macedo made a demand on American for the $100,000 per person policy limits of the Car Policy pursuant to the underinsured motorist endorsement. (Nichols Decl. Ex. 4.) By November 20, 2011, American confirmed its settlement with Braun-Salinas and Macedo under the Car Policy for the amount of $75,000 per person, the policy limits less the amounts previously paid by Geico to Braun-Salinas and Macedo. (Nichols Decl. Ex. 5; Compl. ¶ 22.) American recognized a possible claim under the Umbrella Policy and requested records for additional medical treatment provided to Braun-Salinas and Macedo. (Nichols Decl. Ex. 5.)

In a letter dated January 16, 2012, Plaintiffs demanded payment of the $1,000,000 policy limits of the Umbrella Policy for the injuries to Braun-Salinas and Macedo. (Nichols Decl. Ex. 6.) On February 9, 2012, American acknowledged the demand, advised Plaintiffs it was reviewing the file, and again requested additional medical information, noting that Braun-Salinas and Macedo were still being treated for their injuries. (Nichols Decl. Ex. 7.) On March 9, 2012, American documented a telephone call with Plaintiffs' counsel in which American explained that it would not make a settlement offer until it received invoices for recent medical treatment provided to Braun-Salinas and Macedo. (Nichols Decl. Ex. 8.)

On May 11, 2012, Plaintiffs advised American by letter that Salinas planned to make a claim against the Car Policy for loss of consortium. (Nichols Decl. Ex. 10.) Additionally, Plaintiffs informed American they had obtained the medical records requested by American and would forward them to American in the near future. (Nichols Decl. Ex. 10.) On June 6, 2012, American

denied Salinas's loss of consortium claim, explaining that it "does not fall within the UIM coverage and his claim does not mee[t] the definition of a bodily injury." (Nichols Decl. Ex. 11 at 1.) In doing so, American relied on the provisions of the Car Policy which provide:

> **We** will pay compensatory damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle**. The **bodily injury** must be sustained by an **insured person** and must be caused by accident and arise out of the **use** of the **underinsured motor vehicle**.

(Nichols Decl. Ex. 11 at 1; Kocher-Moar Decl. Ex. 1 at AF 18.) The term "bodily injury" is defined in the Car Policy as "bodily injury to or sickness, disease or death of any person." (Nichols Decl. Ex. 11 at 1; Ex. 15 at 2.)

On September 17, 2012, Wade Nielsen informed Plaintiffs that he was now handling their claim file for American and asked for Plaintiff's cooperation to "help accumulate the necessary materials that will ultimately result in timely settlement decisions." (Nichols Decl. Ex. 12.) On December 28, 2012, American advised Plaintiffs that "[b]ased on the policy language there may not be coverage for Ester Macedo under the umbrella policy." (Nichols Decl. Ex. 13 at 1.) On January 10, 2013, Plaintiffs objected to American's preliminary finding of lack of coverage for Macedo, arguing that Macedo is covered both as a user of a motor vehicle and as a domestic employee of the insured under the Umbrella Policy and that American waived any dispute over her coverage by accepting, and settling, her claim under the Car Policy. (Nichols Decl. Ex. 14 at 1-3.) Plaintiffs represented that to date, Braun-Salinas and Macedo had "over $200,000 in combined medical specials alone" and asserted that based on the resulting injuries, the $1,000,000 policy limits of the Umbrella Policy "simply do not compensate my clients for their injuries." (Nichols Decl. Ex. 14 at 3.) Plaintiffs again demanded American settle Braun-Salinas and Macedo's claim for the full policy

limits of the Umbrella Policy and advised American that if it failed to settle the claim by January 14,

2013, Plaintiffs would commence litigation and seek attorney fees and litigation expenses. (Nichols

Decl. Ex. 14 at 4.) Upon receiving the letter dated January 10, 2013, American offered to settle

Braun-Salinas and Macedo's claim under the Umbrella Policy for $200,000, representing $100,000

for each claimant. (Nichols Decl. ¶ 15.) Plaintiffs filed this action in Circuit Court of the State of

Oregon for the County of Multnomah on January 14, 2013. American removed the action to this

court on February 14, 2013.

*Legal Standard*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a) (2012). Summary judgment is not proper if material factual issues exist for trial. *Warren v.

City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of

a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts

which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot defeat summary

judgment by relying on the allegations in the complaint, or with unsupported conjecture or

conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

Thus, summary judgment should be entered against "a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell

*v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c) (2012). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

American moves for summary judgment on Plaintiffs' Second Claim for Relief for breach of the implied covenant of good faith and fair dealing; Third Claim for Relief for intentional infliction of emotional distress; Fourth Claim for Relief for negligent infliction of emotional distress; and Fifth Claim for Relief[2] for negligence *per se*; as well as on Salinas's loss of consortium claim and Plaintiffs' attempt to recover emotional distress damages on their breach of contract claim. Plaintiffs do not address, and impliedly concede, American's motions with regard to the Third and Fourth Claims for Relief and the attempt to recover emotional distress damages on the breach of

---

[2]Plaintiffs mistakenly identify their negligence *per se* claim as the Third Claim for Relief in the First Amended Complaint.

contract claim.   Accordingly, the court addresses American's motion for summary judgment on the implied covenant, negligence *per se*, and loss of consortium claims below.

I.  Second Claim for Relief – Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege that American breached its contractual obligations of good faith and fair dealing when it refused to conduct a reasonable investigation of Plaintiffs' claims, failing to make a reasonable and timely settlement offer, and compelling Plaintiffs to initiate litigation.   American argues that the terms of the Umbrella Policy contemplate a disagreement with regard to the value of an underinsured motorist claim and that litigation may be necessary to resolve that dispute.

The implied, contractual duty of good faith and fair dealing is a well-recognized part of Oregon common law. *Best v. U. S. Nat'l Bank of Oregon*, 303 Or. 557, 561 (1987).  This duty requires that the parties will not act in a way that destroys or injures the other, *Perkins v. Standard Oil Co.*, 235 Or. 7, 16 (1963), or that frustrates or defeats the object of the contract. *Warnock v. Bonneville Gen. Agency, Inc.*, 271 Or. 634 (1975).  The contractual good faith doctrine is designed to "effectuate the reasonable contractual expectations of the parties." *Best*, 303 Or. at 563.  "The obligation of good faith does not vary the substantive terms of the bargain . . ., nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract . . . ." *U.S. Nat'l Bank of Oregon v. Boge*, 311 Or. 550, 567 (1995).

The Oregon Supreme Court rejected a contractual duty of good faith and fair dealing claim based on the express terms of the contract between the parties despite the financial loss and damaged reputation suffered by the plaintiff when defendant foreclosed on secured real estate. *Uptown Heights Assocs. Ltd P'ship v. Seafirst Corp.*, 320 Or. 638 (1995).  The court summarized the established principles governing a contractual duty of good faith claim:

> [I]f a written contract between the parties expressly allows for a particular remedy by one of the parties, in the face of a specified breach, the parties' objectively "reasonable expectations" under the contract include the invocation of that remedy in the face of that breach. The party invoking its express, written contractual rights does not, merely by so doing, violate its duty of good faith.

*Id*. at 643. Because the contact between the parties allowed defendant to foreclose on the property in the event plaintiff defaulted in its repayment obligations and plaintiff admitted to such default, defendant's foreclosure on the property was appropriate, even in light of plaintiff's request to postpone the foreclosure to allow plaintiff to complete a sale of the property. *Id*. at 647-48.

The Car Policy specifically provides that if American and an insured do not agree on the amount of damages payable under the uninsured motorist endorsement, the matter may be arbitrated or litigated. (Kocher-Moar Decl. Ex. 1 at AF 18-19.) The Umbrella Policy relies on the provisions of the underlying Car Policy to the extent it specifically provides that "Uninsured and Underinsured Motorists Coverage under this policy will be no broader than the underlying insurance."

Here, the parties dispute the amount of damages properly payable to Braun-Salinas and Macedo under the Umbrella Policy. Plaintiffs feel their claim is worth $1,000,000 while American has offered to settle the claim for $200,000, an amount nearly twice the documented medical specials at that time when considered in conjunction with the $200,000 already paid under the Car Policy. Accordingly, the parties do not agree on the amount of damages payable and arbitration or litigation to determine the proper amount is appropriate and  contemplated under the express terms of the policies.

Plaintiffs appear to argue that if they consider their claim to be worth at least $1,000,000, they have a reasonable expectation that American will pay the limits of the Umbrella Policy regardless of American's position on an appropriate amount of damages. However, "[i]t is only the

objectively reasonable expectations of [the] parties that will be examined in determining whether the obligation of good faith has been met" and expecting payment of $1,000,000 when Plaintiffs had incurred only approximately $200,000 in medical expenses at the time the demand was made was not objectively reasonable. *Tolbert v. First Nat'l Bank*, 312 Or. 485, 494 (1991).

Plaintiffs rely on a recent Oregon Supreme Court case in support of their argument that the unfair claim settlement practices found in OR. REV. STAT. 746.230 are part of an insurer's contractual obligations of good faith and fair dealing. *Ivanov v. Farmers Ins. Co. of Oregon*, 344 Or. 421 (2008). In *Ivanov*, the court specifically relied on the presumption created by Oregon's personal injury protection statutes, found at OR. REV. STAT. 742.518 to 742.540, that claims for statutorily mandated medical expenses are reasonable and necessary unless denied by the insurer within sixty days, but merely referenced OR. REV. STAT. 746.230 in holding that the insurer must make a reasonable investigation before denying such charges.

> Under [OR. REV. STAT. 746.230(1)(d)], an insurer is obligated to conduct a "reasonable investigation" sufficient to support a decision to deny a medical expense claim that is statutorily "presumed to be reasonable and necessary." Obedience to that prohibition is a component of Farmers' good faith obligation in this context.

*Ivanov*, 344 Or. at 421. The court then held that genuine issues of material fact existed with regard to the sufficiency of Farmers' claim review process in light of the presumption that medical expenses are medically reasonable and necessary, and remanded for additional proceedings. *Id*. at 431-32.

Plaintiffs are seeking payment under an underinsured motorist endorsement, not personal injury protection coverage. The statutory presumption that medical expenses incurred by Plaintiffs are reasonable and necessary is found in Oregon's personal injury protection statutes and does not apply to actions, such as the one currently before the court, brought to recover underinured motorist

coverage. Therefore, the holding in *Ivanov* is not relevant to the issues before the court.

Furthermore, even assuming that American was required to reasonably investigate Plaintiffs' claims, Plaintiffs have failed to present evidence that American failed to do so. Based on the evidence before the court, American tendered the limits of the Car Policy to Plaintiffs within a month of Plaintiffs' demand. In November 2011, February 2012, and March 2012, American requested additional medical records from Plaintiffs to allow them to investigate the claim under the Umbrella Policy. In May 2012, Plaintiffs advised American it had the requested medical records and would provide them in the near future. In doing so, Plaintiffs impliedly acknowledge that American did not have the requisite medical records until at least the middle of 2012 and likely later, based on American's additional request in September 2012 for the materials necessary to "result in timely settlement decisions." (Nichols Decl. Ex. 12.) In any event, the record reveals that American was attempting to obtain the information necessary to evaluate Plaintiffs' claims from November 2011 through September 2012 and that American made a settlement offer in January 2013. Based on this record and the absence of evidence supporting an inference that American did not reasonably investigate Plaintiff's claims, reasonable minds could not differ that American conducted a prompt and reasonable investigation into Plaintiffs' claim under the Umbrella Policy.

The relevant policies contemplate that a dispute regarding the amount properly payable under the underinsured motorist endorsement may arise and indicate that arbitration or litigation may be initiated to resolve that dispute. American's refusal to pay the $1,000,000 demanded by Plaintiffs and, instead, make a $200,000 settlement offer within four days of Plaintiffs' demand, invoked American's rights under the policies and did not result in a breach the implied covenant of good faith and fair dealing. American is entitled to summary judgment on Plaintiffs' Second Claim for Relief.

## II.  Fifth Claim for Relief – Negligence *Per Se* in Performance of Contract

In their Fifth Claim for Relief, Plaintiffs rely on OR. REV. STAT. 746.230 to create a standard of care independent of the terms of the policies and support a negligence *per se* claim.  Oregon courts have unequivocally held that "an insurer's bad faith refusal to pay policy benefits to its insured sounds in contract and is not actionable in tort in Oregon."  *Employers' Fire Ins. v. Love It Ice Cream*, 64 Or. App. 784, 791(1983).  However, Oregon courts have allowed an insured to pursue a tort claim against its insurer where the insurer is subject to a standard of care independent of the insurance policy, which occurs when the insurer undertakes its obligation to provide a defense to the insured.  *Georgetown Realty, Inc. v. Home Ins. Co.*, 313 Or 97, 110-11 (1992)("When a liability insurer undertakes to 'defend,' it agrees to provide legal representation and to stand in the shoes of the party that has been sued. . . .  That kind of relationship carries with it a standard of care that exists independent of the contract and without reference to the specific terms of the contract.") While conceding that no special relationship exists between themselves and American, Plaintiffs argue that the provisions of OR. REV. STAT. 746.230 impose a duty on American independent of the policies.

The Oregon courts have, on occasion, allowed a plaintiff to rely on statutory provisions to create a duty sufficient to support a negligence claim.  *See Abraham v. T. Henry Constr. Inc.*, 230 Or. App. 564, 573 (2009)(state building code supported negligence *per se* claim based on violation of standard of care independent of terms of contract between parties);  *Simpkins v. Connor*, 210 Or. App. 224, 232 (2006)(statute requiring the production of medical records upon receipt of an authorized request for such records created a statutory duty owed to patients and those authorized to obtain records).  The relevant inquiry is whether the legislature indicated, either in the language of the statute or legislative history, that it enacted the statute to protect the plaintiff from the type of

loss suffered. *Abraham*, 230 Or. App. at 573 (allegations supporting a negligence *per se* claim must include "that plaintiff was a member of the class of persons meant to be protected by the statute [or rule]; and . . . that the injury plaintiff suffered is of a type that the statute [or rule] was enacted to prevent); *Simpkins*, 210 Or. App. at 231 ("To determine whether a statute creates a duty, we examine the legislature's intent. . . . We determine legislative intent by examining the text and context of the statutory provision, and, if the intent is not clear after that first level of analysis, by considering the legislative history.").

Despite Plaintiffs' arguments to the contrary, Oregon courts have considered the question of whether the state insurance code creates a the duty independent of an insurance policy necessary to support a negligence claim and found they do not. In *Farris v. United States Fid. & Guar. Co.*, 284 Or. 453 (1978), the court specifically addressed the issue of whether under a negligence theory an insured can recover emotional distress damages resulting from the insurer's refusal to defend. The court found that the insurance code was intended to "prohibit insurance companies from intentionally breaching their contract to settle their insureds' clams . . . and to inflict certain consequences for so doing," but not that the legislature intended to allow the recovery of damages for emotional distress for violations of the code. *Id*. at 458. The court explained:

> There is nothing to indicate that the legislature intended, when it prohibited certain claims settlement practices in ORS 746.230, that actions for breach of insurance contracts would be transformed, in all of the covered instances, into tort actions with a resulting change in the measure of damages. The statutes express no public policy which would promote damages for emotional distress. Concern about the insured's peace of mind does not appear to be the gravamen of the statutory policy.

*Id*. Three years later, the court acknowledged its holding in *Farris* that "violation of the provisions of the Insurance Code prohibiting certain conduct did not give rise to a tort action." *Bob Godfrey*

*Pontiac, Inc. v. Roloff*, 291 Or. 318, 328 (1981).   The court noted that the "primary reason for so holding was that other provisions of the code provided for civil penalties payable to the state for code violations and that this was an indication that the legislature did not intend a private cause of action." *Id*.  (citing *Farris*, 284 Or. at 458).  The Oregon court of appeals followed suit in *Love It*, finding that "the violation of ORS 746.230(f), which requires insurers to settle claims promptly and in good faith where their liability is reasonably clear, does not give rise to a tort action."  *Love It*, 64 Or. App. at 790.  All of these holdings are consistent with the Oregon courts "disfavor [of] judicial establishment of a civil cause of action based on a statute."  *Russell v. Liberty Mut. Ins. Co.*, No. 3:13-cv-00163-SU, 2013 WL 3994678, *3 (D. Or. Aug. 2, 2013)(citing *Boyer v. Salomon Smith Barney*, 344 Or. 583, 595 (2008).

The Ninth Circuit has deferred to the clear holdings of the Oregon courts with regard to the absence of a insurer's duty to make reasonable payments independent of the insurance policy.  In addressing whether an insurer breached a fiduciary duty by its refusal to pay disability benefits, the court first explained "the rule is that (t)he responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it."  *Gorodetzer v. Massachusetts Cas. Ins. Co.*, No. 98-35632, 1999 WL 993651, *8 (9th Cir. Nov. 1, 1999)(quoting *Fedrick, Inc. v. Borg-Warner Corp.*, 552 F.3d 852, 857 (9th Cir. 1977)).  The court then explained that:

> In *Employers' Fire Ins. v. Love It Ice Cream*, 670 P. 2d 160 (Or. Ct. App. 1983), the Oregon Court of Appeals held that "an insurer's bad faith refusal to pay policy benefits to its insured sounds in contract and is not an actionable tort in Oregon." *Id*. at 165.  And the Oregon Supreme Court has stated, in dictum that, "[i]n cases involving the insurer's duty to pay under polices for theft, fire, health, disability or life insurance, the unique relationship which gives rise to the special duty of liability insurers to attempt to settle within their policy limits does not arise. *Santilli v. State*

> *Farm Life Ins. Co.*, 562 P.2d 965, 969 (Or. 1977).  Because Oregon law does not
> recognize a fiduciary duty on the part of insurers outside the context of the third-party
> liability insurance, we conclude that the district court correctly dismissed the breach
> of fiduciary duty claim.

*Gorodetzer*, 1999 WL 993651 at *8.[3]  Similarly, at least one judge on this court has held that OR.

REV. STAT. 746.230 does not impose fiduciary duties on insurers doing business in the state of

Oregon.  *Allstate Ins. Co. v. Breeden*, No. CV 01-1686-AS, 2007 WL 4480759 (Dec. 17, 2007)(court

relied on *Love It* to dismiss claim relying on allegations that insurance code created statutory duty

on insurance company to pay benefits under homeowner's policy for damage resulting from fire).

Based on clearly established state law and the deference this court must show to the rulings

of the Oregon courts, the court finds that OR. REV. STAT. 746.230 does not create a standard of care

independent of the terms of the policies.  Accordingly, Plaintiffs are unable to state a claim for

negligence *per se* in reliance on duties created by OR. REV. STAT. 746.230.

## III.  Loss of Consortium

Salinas seeks damages for loss of consortium suffered as a result of injuries to his wife.  He

makes clear in his opposition briefing that he is claiming these damages as an insured under the Car

Policy, separate from his wife's claim as an insured under the same policy.  The Car Policy had a

$300,000 per occurrence limit for under insured coverage, leaving $100,000 available to Salinas

under the Car Policy for any injuries he might have incurred as a result of the accident.  (Kocher-

---

[3]While the policies before the court are liability policies, the parties are litigating the amount payable to the insured, not a third party.  In this context, the policies are more comparable to health, disability, or life insurance policies than liability policies.  *See Strader v. Grange Mut. Ins. Co.*, 179 Or. App. 329, 334 (2002)("[T]he relationship between and insurer and its insured is special with respect to the insurer's performance of its duty to defend, so that negligent performance of that duty gives rise to a tort claim, but the same relationship is not special with respect to the insurer's refusal to settle within policy limits, which sounds only in contract; in the former context, the insurer is in something resembling a fiduciary role, whereas in the latter it and the insured are adversaries.").

Moar Decl. Ex. 1 at 1; Compl. ¶ 21.)  The consistent demands made by Braun-Salina and Macedo for the $1,000,000 policy limits of the Umbrella Policy to be apportioned between them necessarily requires Salinas's claim to be limited to coverage under the Car Policy.

American asserts that loss of consortium damages are not covered under the express terms of the Car Policy.  The Car Policy obligates American to pay damages for bodily injury suffered by an insured and defines bodily injury as physical damage – "bodily injury to or sickness, disease or death of any person".  Impliedly conceding his claim for lost consortium is not covered under the Car Policy, Salinas urges the court to adopt the broader definition of bodily injury found in the Umbrella Policy,[4] which includes "loss of services," arguing the Car Policy and Umbrella Policy should be considered one policy.

Under Oregon law, the interpretation of plain and unambiguous contract provisions is a question of law for the court.  *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469 (1992). Construction of insurance contracts requires ascertaining the parties' intent, which is determined from the terms and conditions of the policy.  *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or. 303, 307 (1999); *Mcleod v. Tecorp Int'l, Ltd.*, 318 Or. 208, 215 (1993).  If an insurance policy explicitly defines the word or phrase at issue, the court is bound to apply that definition.  *Holloway v. Republic Indem. Co. of America*, 341 Or. 642, 650 (2006).  If the policy does not define the word or phrase, the court next looks to its primary and general meaning.  *Id.*; OR. REV. STAT. § 42.250. Where the word or phrase is susceptible to two or more plausible interpretations, it must be considered in the particular context in which is used in the policy and in the broader context of the

---

[4]The Umbrella Policy defines "bodily injury" as "bodily harm, sickness or disease.  It includes required care, loss of services and resulting death."  The definition also identifies specific exclusions not relevant to this action.  (Kocher-Moar Decl. Ex. 2 at AF 25.)

policy as a whole. *Holloway*, 341 Or. at 650. The insurer has the burden of drafting insurance

policies that are clear and unambiguous. *North Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 29 (2001).

Therefore, any unresolved ambiguity in an insurance policy should be strictly construed against the

insurer. *Hoffman*, 313 Or. at 470.

Here, the Car Policy specifically defines the phrase "bodily injury" to exclude loss of

services. Accordingly, the court is bound by this definition and must find that Salinas's loss of

consortium claim is not covered by the Car Policy. In the absences of any ambiguity, the court need

not consider the phrase in the context of the Car Policy as a whole, not to mention in conjunction

with the Umbrella Policy, as Salinas argues. However, even if the court were to consider the terms

of the Umbrella Policy, which contains a broader definition of the phrase "bodily injury" by

encompassing loss of services, the Umbrella Policy also specifically provides that "Uninsured and

Underinsured Motorists Coverage under this policy will be no broader that the underlying

insurance." (Kocher-Moar Decl. Ex. 2 at AF 34.) Consequently, reading the Car Policy and the

Umbrella Policy as a whole would still require the more restrictive definition of the phrase "bodily

injury" found in the Car Policy to govern Salinas's claim for loss of consortium.

Salina's claim for loss of consortium is barred by the definition of the phrase "bodily injury"

set forth in the Car Policy. Consequently, the Car Policy does not cover the claim and American is

entitled to summary judgment on this claim.

*Conclusion*

American's motion for summary judgment on Plaintiffs' Second Claim for Relief for breach

of the implied covenant of good faith and fair dealing, Third Claim for Relief of intentional infliction

of emotional distress, Fourth Claim for Relief negligent infliction of emotional distress, Fifth Claim

for Relief for negligence *per se*; Salinas's claim for loss of services and consortium, and Plaintiffs' claims for emotional distress damages under their breach of contract claim is GRANTED.

DATED this 1st day of April, 2014.


/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge